Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Tyler H.L. Tornabene
Daniel Hugo Fruchter
Jacob E. Brooks
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA  99210-1494
Telephone: (509) 353-2767

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

|  |  |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, KRYSTAL JEFFERIES, <br><br> Plaintiffs <br><br> v. <br><br> ALL STAR PROPERTY MANAGEMENT, LLC, GIEVE PARKER, and ARLIN REYNOLDS JORDIN, <br><br> Defendants. | Case No. 2:22-CV-00067-MKD <br><br> **UNITED STATES' COMPLAINT IN INTERVENTION** <br><br> **JURY TRIAL DEMANDED** |

## <u>UNITED STATES' COMPLAINT IN INTERVENTION</u>

### I.    INTRODUCTION

1.    The United States of America ("United States") hereby files its Complaint in Intervention alleging that Defendant Gieve Parker, individually, and through her company, Defendant All Star Property Management, LLC, ("All Star Property"), presented and caused to be presented false and fraudulent claims to the United States thereby receiving hundreds of thousands of dollars in federal funds that Congress and the United States Department of the Treasury provided to be used to assist struggling

UNITED STATES' COMPLAINT IN INTERVENTION - 1

tenants with rent assistance during a declared national emergency and economic crisis. In this manner, and by knowingly making, using, and causing to be made and used, false statements and records material to their false and fraudulent claims, Defendants Gieve Parker and All Star Property violated the False Claims Act, 31 U.S.C. § 3729.

2.    The United States also files its Complaint in Intervention alleging that Defendant Arlin Reynolds Jordin ("Arlin Jordin"), the owner of multiple properties through which Defendants Gieve Parker and All Star Property committed their scheme to defraud the United States of federal COVID-19 rental assistance for struggling tenants, was himself paid a portion of these federal monies by mistake and, through the fraud scheme described herein, was otherwise unjustly enriched with public funds intended to benefit struggling tenants during a declared national emergency.

3.    Defendant Gieve Parker, individually and acting on behalf of her company Defendant All Star Property, knowingly made and used false and fraudulent records and statements that were material to the false claims Defendants Parker and All Star Property caused to be presented to the United States Department of the Treasury's Emergency Rental Assistance Program, known in the State of Washington as the Treasury Rent Assistance Program ("T-RAP"). Defendants Gieve Parker and All Star Property knowingly authorized, completed, and submitted more than forty false and fraudulent rental assistance applications for tenants, each application of which contained numerous material falsities. Defendants Gieve Parker and All Star Property's fraudulent rental assistance applications, known as T-RAP Rent Payment Agreement forms, always included one or more of the following materially false and fraudulent representations:

- falsely and fraudulently certifying that the tenant had past-due rent when, as Defendants Gieve Parker and All Star Property knew, the tenant did not have past-due rent;

- falsely and fraudulently certifying inflated monthly rent amounts beyond the tenant's actual rent, thereby fraudulently increasing the amount of T-RAP rental assistance requested and provided;

- falsely and fraudulently certifying that full rental assistance was and would be needed for future months when, as Defendants Gieve Parker and All Star Property knew, some or all of the rent was consistently being paid by the tenant and/or an outside source such as a governmental or charitable organization;

- falsely and fraudulently certifying that the tenant was still residing at the residence for which rental assistance was being sought when, as Defendants Gieve Parker and All Star Property knew, the tenant was no longer a resident and therefore All Star Property was not eligible to receive any rental assistance for that tenant; and

- falsely and fraudulently certifying that the money received would be used as rental assistance for the tenant, when Defendants Gieve Parker and All Star Property knew that it would not be so used, in fact was not so used, and in multiple cases could not be so used due to the tenant's rent already being and having been paid by the tenant and/or outside sources such as governmental or charitable organizations, resulting in Defendants Gieve Paker and All Star Property at times collecting double and even triple rent for the same property and the same tenant in the same month.

4.     By providing false and fraudulent certifications in their T-RAP Rent Payment Agreement forms, Defendants Gieve Parker and All Star Property fraudulently received rental assistance funds for which they were not eligible from the U.S. Treasury Department as distributed by its local partner, LiveStories, an organization in charge of overseeing, authorizing, and distributing rental and utility assistance funds to tenants and landlords on a need basis. Additionally, Defendant Arlin Jordin received a portion of the fraudulently obtained and ineligible T-RAP

UNITED STATES' COMPLAINT IN INTERVENTION - 3

funds for the properties he owned and on which Defendants Gieve Parker and All Star Property knowingly submitted and caused to be submitted false claims to LiveStories and the U.S. Treasury Department.

5.      Through their fraud perpetrated on the T-RAP, Defendants Gieve Parker and All Star Property defrauded the United States out of hundreds of thousands of dollars in federal rental assistance money.

## II.    THE PARTIES, JURISDICTION, AND VENUE

### A.    The Parties

6.      Plaintiff, the United States of America ("United States") brings this civil enforcement action against Defendants Gieve Parker and All Star Property to recover treble damages and civil penalties pursuant to the False Claims Act, 31 U.S.C. §§ 3729-3733 , and against Defendants Gieve Parker, All Star Property, and Arlin Jordin under the common law.

7.      The United States Department of the Treasury ("U.S. Treasury Department") is a cabinet-level executive department of the United States responsible for promoting economic prosperity and ensuring the financial security of the United States. The U.S. Treasury Department's Emergency Rental Assistance Program is a program within the U.S. Treasury Department to provide needed rental assistance to low-income tenants struggling to avoid eviction for non-payment of rent during the COVID-19 pandemic.  The Emergency Rental Assistance Program is administered through state and local governments and in Washington State was known as the Treasury Rent Assistance Program ("T-RAP").

8.      LiveStories, also known as FORWARD, is an organization based in Washington State which contracted with the City of Spokane and the Washington State Department of Commerce to administer and oversee T-RAP in the city of Spokane, Washington.

9.      Defendant All Star Property Management, LLC ("All Star Property") is a property management company that specializes in managing residential and investment

UNITED STATES' COMPLAINT IN INTERVENTION - 4

properties in the Eastern District of Washington. Defendant Gieve Parker was the owner and manager of Defendant All Star Property at all times relevant to this complaint and at all times relevant was an agent who worked on behalf of Defendant All Star Property.

10.  At all times relevant, Defendants Gieve Parker and All Star Property managed rental properties, including the properties referenced and discussed in this Complaint, on behalf of multiple property owners, including Defendant Arlin Jordin. Defendants Gieve Parker's and All Star Property's duties included collecting rent, inspecting the properties, conducting upkeep and maintenance of the properties, and interfacing with the tenants throughout their tenancy on behalf of the property owners. Property owners paid Defendant All Star Property a percentage of all rents collected from the properties managed, usually between 8.5% and 10%, as property management fees. With regard to Defendant Arlin Jordin's properties, Defendant All Star Property was paid 10% of the rents collected as its property management fees. The percentage of Defendant All Star Property's property management fees was calculated based on all rents collected for the properties, from whatever source, including from rental assistance programs such as T-RAP. Defendant Gieve Parker, as owner of Defendant All Star Property, received compensation from Defendant All Star Property's income, including its management fees.

11.  Defendant Arlin Reynolds Jordin ("Arlin Jordin") is a landlord who, during times relevant, owned five properties within the city of Spokane that were managed by Defendants Gieve Parker and All Star Properties. At times relevant, Defendant Arlin Jordin was serving a prison sentence at Coyote Ridge Corrections Center for his conviction of rape and indecent liberties. Defendant Jordin's convictions were a result of Defendant Jordin drugging and raping a prospective tenant, and at trial, three other women testified to having similar experiences perpetrated by Defendant Jordin. *See State v. Jordin*, 144 Wn. App. 1052 (2008) (unpublished). Despite being incarcerated, during times relevant, Defendants Gieve Parker and All Star Property

maintained contact with Defendant Jordin to manage certain of his rental properties including properties utilized as part of the fraud scheme described herein and from which the Defendants all profited.

12.    In February 2022, Defendants Gieve Parker and All Star Property terminated their property management contract with Defendant Arlin Jordin.  Upon terminating the contract, Defendants Gieve Parker and All Star Property transferred all rental balances for Defendant Arlin Jordin (after deducting their management fees) to Defendant Arlin Jordin—including funds that were falsely and fraudulently obtain from T-RAP.

13.    On April 13, 2022, the relator, Krystal Jefferies, filed her *qui tam* complaint under seal pursuant to 31 U.S.C. § 3730(b), alleging that Defendants Gieve Parker and All Star Property violated the False Claims Act by submitting false and fraudulent claims for emergency rental assistance for relator's rent when relator was no longer a tenant of Defendant All Star Property's and owed no rent to Defendant All Star Property.  ECF No. 1.  On October 13, 2022, the United States filed its Notice of Intervention, ECF No. 11, notifying the Court of its election to intervene in the action and to file its complaint within ninety days.

B.    Jurisdiction and Venue

14.    This action arises under the False Claims Act, 31 U.S.C. §§ 3729-33, and under common law theories of payment by mistake of fact, unjust enrichment, and negligence.  This Court has jurisdiction over this action under 31 U.S.C. § 3730(a) and 28 U.S.C. § 1345.

15.    Venue is proper in the Eastern District of Washington pursuant to 28 U.S.C. § 1391(b) and 31 U.S.C. § 3732(a).

16.    This Court may exercise personal jurisdiction over Defendants Gieve Parker and All Star Property pursuant to 31 U.S.C. § 3732(a) because Defendants Gieve Parker and All Star Property resided and transacted business in this District during the

relevant time period, and because many of the acts proscribed by the False Claims Act occurred in this District.

17.     This Court may exercise personal jurisdiction over Defendant Arlin Jordin pursuant 28 U.S.C. §1345 because at times relevant Defendant Arlin Jordin resided in the Eastern District of Washington, owned real property within the Eastern District of Washington, transacted business within the Eastern District of Washington related to that real property, and which real property was related to the fraud scheme described herein and was the basis for the payment by mistake to Defendant Jordin, his unjust enrichment, and his corresponding negligence.

### III.    LEGAL BACKGROUND

A.    <u>The False Claims Act</u>

18.     Enacted during the Civil War, the purpose of the False Claims Act was to combat "widespread fraud by government contractors who were submitting inflated invoices and shipping faulty goods" to the Union Army.  *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1265-1266 (citing *United States v. Rivera*, 55 F.3d 703, 709 (1st Cir. 1995)); *see also U.S. ex rel. Newsham v. Lockheed Missiles and Space Co., Inc.*, 722 F.Supp. 607, 608 (N.D. Cal. 1989) (*quoting* 36 R. Tomes, The Fortunes of War, Harper's New Monthly Magazine 228 (July 1864)[1].

19.     The False Claims Act provides, in pertinent part, that any person who:

(A)    knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]

(B)    knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or] . . .

---

[1] ("For sugar [the government] often got sand; for coffee, rye; for leather, something no better than brown paper; for sound horses and mules, spavined beasts and dying donkeys; and for serviceable muskets and pistols the experimental failures of sanguine inventors, or the refuse of shops and foreign armories."

(G)    knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,

is liable to the United States Government [for statutory damages and such penalties as are allowed by law].

31 U.S.C. § 3729(a)(1)(A); (B); and (G) (2010).

20.    The False Claims Act defines "knowingly" as follows:

(1)    the terms knowing and knowingly –
(A)  mean that a person, with respect to information –
       (i)  has actual knowledge of the information;

       (ii)  acts in deliberate ignorance of the truth or falsity of the information; or
       (iii)  acts in reckless disregard of the truth or falsity of the information; and
(B)  require no proof of specific intent to defraud[.]

31 U.S.C. § 3729(b)(1) (2010).

21.    Accordingly, "those who submit claims to the government for reimbursement may be acting in reckless disregard as to the truth or falsity of their submissions if they fail to take steps to confirm the accuracy of those submissions." *Seibert v. Gene Sec. Network, Inc.* 75 F. Supp. 3d 1108, 1119 (N.D. Cal. 2014).

22.    The False Claims Act defines "claim" as:

(2)    the term "claim" –
(A) means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that—
       (i) is presented to an officer, employee, or agent of the United States; or
       (ii) is made to a contractor grantee, or other recipient, if the money or property is to be spent or used on the

UNITED STATES' COMPLAINT IN INTERVENTION - 8

Government's behalf or to advance a Government program
or interest, and if the United States Government—
> (I) provides or has provided any portion of the money
> or property requested or demanded; or
> (II) will reimburse such contractor, grantee, or other
> recipient for any portion of the money or property
> which is requested or demanded; and

(B) does not include requests or demands for money or property
that the Government has paid to an individual as compensation for
Federal employment or as an income subsidy with no restrictions
on that individual's use of the money or property[.]

31 U.S.C. § 3729(b)(2) (2010).

23.      A "claim" under the False Claims Act includes any claims submitted by a landlord for rental assistance purposes, where all or part of the rent assistance funding is paid or reimbursed through federal funding and to advance a federal program or interest. *See e.g., United States ex rel. Rosales v. San Francisco Housing Authority*, 173 F. Supp. 2d 987 (N.D. Cal. 2001), *United States ex rel. Terry v. Wasatch Advantage Group, LLC*, 2017 WL 3116940 (E.D. Cal. 2017).

24.      Under the False Claims Act, "the term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4) (2010). Materiality looks to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation. A misrepresentation is only considered material "'if it would likely induce a reasonable person to manifest his assent, or the defendant knows that for some special reason the representation is likely to induce the particular recipient to manifest his assent to the transaction.'" *United States ex rel. Savage v. CH2M Hill Plateau Remediation Co.*, No. 4:14-cv-05002-SMJ, 2020 WL 8678016, at *18 (E.D. Wash. Dec. 30, 2020) (quoting *Universal Health servs. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2003 (2016)).

25.      The Supreme Court has held that the False Claims Act must be construed "broadly, as it is intended to reach all types of fraud, without qualification, that might

result in financial loss to the Government." *U.S. ex rel. Campie v. Gilead Sciences, Inc.,* 862 F.3d 890, 899 (9th Cir. 2018) (quoting *United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968)).

26.     The False Claims Act provides that a person is liable to the United States for three times the amount of damages that the United States sustains because of the act of that person, plus additional civil penalties for each violation. 31 U.S.C. § 3729(a)(1).

B.  The Treasury Rental Assistance Program ("T-RAP")

27.     T-RAP was part of the United States' response to the COVID-19 pandemic. The purpose of the program was to prevent evictions that would contribute to the spread of the COVID-19 virus during the pandemic, as well as to mitigate the economic harm caused by the pandemic and threat to stable housing, by paying past, current, and future rent and utility bills of eligible low-income tenants. The U.S. Treasury Department administered the program through state and local governments. The program received funds directly from the Emergency Rental Assistance ("ERA") programs established under the Consolidated Appropriations Act of 2021 and American Rescue Plan Act of 2021.

28.     Established under the Consolidated Appropriations Act of 2021, the first Emergency Rental Assistance Program ("ERA1") provided $35 billion directly to the States, the District of Columbia, U.S. Territories, local governments (population over 200,000), and Indian tribes, to assist households that were unable to pay rent and utilities due to the COVID-19 pandemic through new or existing rental assistance programs.  Section 501 of Division N of the Consolidated Appropriations Act of 2021 appropriated $25 billion for purposes of emergency rental assistance to eligible households suffering from unemployment or other financial hardship due to the COVID-19 pandemic.  Congress later appropriated an addition $21.5 billion for ERA under the American Rescue Plan Act of 2021.  The U.S. Treasury Department refers

to ERA under the Consolidated Appropriations Act, 2021, as "ERA1" and ERA under the American Rescue Plan Act of 2021 as "ERA2".

29.    The U.S. Treasury Department would not recapture any ERA funds that a grantee obligated.  Under ERA programs, funds are considered to be obligated if: (1) the funds have actually been spent providing financial assistance and housing stability to induce a landlord to enter a rental agreement with an eligible household under the U.S. Treasury Department's services under ERA for eligible households; (2) the funds are needed to pay for assistance promised in a commitment letter issued to induce a landlord to enter a rental agreement with an eligible household under the U.S. Treasury Department's conditions; or (3) subject to the conditions described below concerning subrecipients, that the grantee has, as part of the grantee's ERA program administration, entered into a binding agreement or funding commitment requiring the grantee to disburse the funds to a third party for eligible ERA purposes.

30.    Under ERA1 and ERA2, a household was eligible to receive assistance if it was obligated to pay rent on a residential dwelling and the grantee determined that:

> a.    one or more individuals within the household has qualified for unemployment benefits or experienced a reduction in household income, incurred significant costs, or experienced other financial hardship due, directly or indirectly, to the COVID-19 outbreak (ERA1) or to the coronavirus pandemic (ERA2);
>
> b.    one or more individuals within the household can demonstrate a risk of experiencing homelessness or housing instability; and
>
> c.    the household has a household income at or below 80 percent of the area median income (ERA1) or the household is a low-income family (as such term is defined in section 3(b) of the United States Housing Act of 1937 (42 U.S.C. 1437a(b)) (ERA2).

UNITED STATES' COMPLAINT IN INTERVENTION - 11

31.    While there are some differences in eligibility between ERA1 and ERA2, the eligibility requirements are very similar, and the U.S. Treasury Department sought to implement ERA2 consistently with ERA1.

C.  T-RAP Application Requirements

32.    At times relevant the Washington State Department of Commerce and the City of Spokane partnered with LiveStories to administer T-RAP as part of the federal rental assistance addressing the rental crisis that the Spokane community faced during the COVID-19 pandemic.

33.    Consistent with the requirements of ERA1 and ERA2, to receive rental assistance in Spokane through LiveStories, a T-RAP application had to be initiated either by the landlord, including property owners, property managers, or others authorized to seek rent payments, or by the tenant.

34.    Consistent with the requirements of ERA1 and ERA2, to be considered an eligible household for T-RAP, LiveStories required households to meet all the initial screening criteria: (1) the household had current missed or past due rent payments since March 1, 2020, and were still occupying the residence; (2) the household income was at or below 80% of the Area Median Income (ERA1) or the household was a low-income family (as such term is defined in section 3(b) of the United States Housing Act of 1937 (42 U.S.C. 1437a(b)) (ERA2); and (3) the household resided within the Spokane city limits.

35.    Due to the limited nature of the T-RAP funds, during times relevant, the City of Spokane and LiveStories prioritized assistance to households with income that did not exceed 50% of the Area Median Income for the household, households with active eviction cases, elderly and/or disabled applicants as well as referrals of households involved in the Eviction Resolution Pilot Program.

36.    In implementing T-RAP on behalf of the Washington State Department of Commerce, the City of Spokane, and the U.S. Treasury Department, LiveStories required all landlords, including property managers, for T-RAP funds to certify and

UNITED STATES' COMPLAINT IN INTERVENTION - 12

submit a T-RAP Rent Payment Agreement form.  In filling out T-RAP Rent Payment Agreement forms landlords, which included property owners, property managers, or others authorized to seek rent payments, were required to provide household/tenant and rental information including the name(s) of the tenant(s) and the current address of the property where the tenant(s) was/were residing as of the date of the certification of the T-RAP Rent Payment Agreement form by the landlord.  Landlords were also required to fill out the total amount of the rent request and provide the tenant's monthly rent, the months for which the household or tenant were past due and, if requesting assistance for future rents, up to three months of the rents to be paid during that additional covered time period.  Landlords were required to certify on the T-RAP Rent Payment Agreement form that the information provided was true.

37.    The certified representations by landlords, including property managers, of the amount of rent requested by the landlord as being based on the actual monthly rent charged, that the tenant was then residing at the listed property address, the months for which rents were past due, and the amount of future rents (up to three months) to be paid, were all material to LiveStories' and the U.S. Treasury Department's determination of whether to authorize the payment of T-RAP funds to a particular landlord for a specific household or tenant located at a specified property address where they were then residing and to cover specified rent amounts for specified months.

38.    LiveStories, acting on behalf of the Washington State Department of Commerce, the City of Spokane, and the U.S. Treasury Department, also required landlords, which included property owners, property managers, or others authorized to seek rent payments, to certify in the T-RAP Rent Payment Agreement forms that they would abide by all applicable provisions of the Washington State Landlord Tenant Law and the following additional specified terms: (1) accept the total amount requested as "full satisfaction of any rent and late fee balances owed for the months paid by the program"; (2) "[a]gree that no new late fees or additional charges would

UNITED STATES' COMPLAINT IN INTERVENTION - 13

be made for the months covered"; (3) "[a]gree rent will not increase for the household described above for at least six months"; (4) "[a]gree to not limit tenant ability to seek relief due to prior pay or vacate notices as per RCW 59.18.410(3)(d) [regarding tenants who had been served with three or more pay or vacate notices within the previous 12 months] for notices filed prior to the signing of this agreement"; (5) agree not to terminate or refuse the household's tenancy until after six months, unless certain specified exceptions apply; and (6) "[a]gree to repayment of these funds if I [the landlord, including property owners, property managers, or others authorized to seek rent payments] do not fulfill the terms of this agreement." The certified representations by landlords, including property owners, property managers, or others authorized to seek rent payments, that they would abide by each of these written terms of the T-RAP Rent Payment Agreement form, was material to LiveStories' and the U.S. Treasury Department's determination of whether to authorize the payment of T-RAP funds to a particular landlord for a specific household or tenant located at a specified property address where they were then residing and to cover specified rent amounts for specified months.

39.     After reviewing the T-RAP Rent Payment Agreement forms, as certified by landlords, including property managers, and after conducting an eligibility review which included relying on the above detailed material representations and agreements, if LiveStories, on behalf of the U.S. Treasury Department, determined the household was eligible, LiveStories would directly deposit the T-RAP funds into the landlord's bank account for the requested months, for the specified residence, for each tenant. Pursuant to T-RAP requirements, landlords and property managers were then required to apply the funds to the tenant's rent balance.

## IV.    THE FRAUDULENT SCHEME

A.     Gieve Parker's and All Star Property's False and Fraudulent T-RAP Rent Payment Agreement Forms

UNITED STATES' COMPLAINT IN INTERVENTION - 14

40.     From at least August, 2021, and continuing through at least January, 2022, Defendants Gieve Parker and All Star Property knowingly completed, signed, certified, and submitted false and fraudulent T-RAP Rent Payment Agreement forms to LiveStories for rental assistance, which falsely and fraudulently: a) certified that the tenant then resided at the property; and/or b) certified that the tenant owed past due rent; and/or c) certified that the monthly rent listed was the actual monthly rent; and/or d) certified that rental assistance for future months would be needed; and/or e) certified that Defendants Gieve Parker and All Star Property would abide by all listed terms including accepting the rental assistance as full satisfaction of rents owed for the period covered, to not raise the rents for the period covered, and repay any funds if the they did not abide by the certified terms.   Defendant Gieve Parker authorized the false and fraudulent T-RAP Rent Payment Agreement Forms by signing and certifying that "[a]s the Landlord, property manager/owner, or person authorized to accept payment, I certify the above information is true and will abide by the agreements below from the signing of this agreement and all applicable provisions of WA State landlord-tenant law."   By so certifying and submitting the T-RAP Rent Payment Agreement forms to LiveStories, Defendant Gieve Parker created the false and fraudulent appearance that Defendant All Star Property's rent requests were always needed for a low income tenant in the full amount requested, and that such rental assistance would be applied for the tenant's benefit in order to ensure that the tenant would not be evicted during a global pandemic and declared national emergency.

41.     As a result of Defendants Gieve Parker's and All Star Property's false and fraudulent certifications on dozens of T-RAP Rent Payment Agreement forms, hundreds of thousands of dollars in T-RAP funds were directly deposited into Defendant All Star Property's bank account.  Defendants Gieve Parker and All Star Property did not use the fraudulently obtained T-RAP funds in full satisfaction of tenants' rent for the covered periods requested and often collected double and even triple rent for the property as a result, thereby using the fraudulently obtained T-RAP

UNITED STATES' COMPLAINT IN INTERVENTION - 15

1   funds not to assist struggling low income tenants during a global pandemic and
2   declared national emergency, but instead using those funds to enrich themselves and
3   property owners, including Defendant Arlin Jordin.

4       42.     By way of example of Defendants Gieve Parker's and All Star
5   Property's materially false and fraudulent claims, Defendants Gieve Parker and All
6   Star Property falsely and fraudulently certified and presented T-RAP Rent Payment
7   Agreement forms to LiveStories requesting T-RAP funds by falsely and fraudulently
8   representing that tenants were behind on their rent despite the fact that Defendants
9   Gieve Parker and All Star Property were aware that those same tenants were paying
10  rent and/or receiving rental assistance from other organizations and therefore were not
11  behind on their rent and consequently were ineligible for T-RAP funds.

12      43.     By way of further example of Defendants Gieve Parker's and All Star
13  Property's materially false and fraudulent claims, Defendants Gieve Parker and All
14  Star Property falsely and fraudulently certified and presented T-RAP Rent Payment
15  Agreement forms to LiveStories inflating tenants' monthly rent over and above the
16  actual agreed upon rent being charged by Defendants Gieve Parker and All Star
17  Property thereby inflating the total rent assistance requested and ultimately paid to
18  Defendants Gieve Parker and All Star Property with T-RAP funds.  As Defendants
19  Gieve Parker and All Star Property knew, T-RAP applicants were not eligible to
20  receive T-RAP funds above the actual agreed upon rent.

21      44.     By way of further example of Defendants Gieve Parker's and All Star
22  Property's materially false and fraudulent claims, Defendants Gieve Parker and All
23  Star Property falsely and fraudulently certified and presented T-RAP Rent Payment
24  Agreement forms to LiveStories representing that full rental assistance would be
25  needed for future months when, as Defendants Gieve Parker and All Star Property
26  knew, some or all of the rent was consistently being paid by the tenant and/or an
27  outside source such as a governmental or charitable organization, and therefore such
28  tenants were not eligible for T-RAP funds in the full amount of the agreed upon rent.

45.     By way of further example of Defendants Gieve Parker's and All Star Property's materially false and fraudulent claims, Defendants Gieve Parker and All Star Property falsely and fraudulently certified and presented T-RAP Rent Payment Agreement forms to Livestories falsely and fraudulently stating and representing that the tenant on behalf of which they were ostensibly requesting rent assistance still resided at the property for which they were ostensibly requesting rent assistance when in fact, as Defendants Gieve Parker and All Star Property knew, the tenant no longer resided at that property and therefore was not eligible for T-RAP funds for rent at that property.

46.     Moreover, once Defendants Gieve Parker and All Star Property obtained the T-RAP funds, ostensibly for the benefit of specific tenants, at specific properties, and for specific months, through one or more of the above described false and fraudulent certifications, Defendants Gieve Parker and All Star Property did not use the fraudulently obtained monies for the specified tenants, properties, and months, but instead kept the monies for themselves and the property owners, including Defendant Arlin Jordin.  Defendants Gieve Parker and All Star Property knew when they certified and submitted the false and fraudulent T-RAP Rent Payment Agreement forms to LiveStories that, contrary to their certification that they would accept the specific T-RAP funds requested "as full satisfaction of any rent and late fee balance owed for the months paid by the program," they would not, and in some instance could not due to other sources actually paying the rent, apply the T-RAP funds to any rent or late fee balance owed by the tenant and instead used the funds directly for their enrichment and the enrichment of the property owners, including Defendant Arlin Jordin.

47.     Once Defendant Gieve Parker certified and submitted the false and fraudulent T-RAP Rent Payment Agreement forms to LiveStories on behalf of Defendant All Star Property, LiveStories, relying on those certifications, would send direct deposits of T-RAP funds, provided by the U.S. Treasury Department, in the

UNITED STATES' COMPLAINT IN INTERVENTION - 17

total amounts requested to Defendants Gieve Parker's and All Star Property's business banking account.  In total, Defendant Give Parker, acting on behalf of Defendant All Star Property, submitted at least 32 T-RAP Rent Payment Agreement forms to LiveStories containing false and fraudulent certifications resulting in Defendant Gieve Parker and All Star Property improperly receiving rental assistance funds for ineligible tenants and/or properties, and further profiting from their correspondingly inflated property management fees.

B. Gieve Parker and All Star Property Fraudulently Sought and Obtained T-RAP Funds for Which They Were Not Eligible

48.    In certifying and presenting the T-RAP Rent Payment Agreement forms to LiveStories, Defendant Gieve Parker, acting on behalf of Defendant All Star Property, did not verify the accuracy of the amount of the rental assistance requested and did not take steps to ensure that such requests were for eligible tenants e.g. those who were behind on their rent and who still resided at a property managed by Defendants Gieve Parker and All Star Property. Further Defendant Gieve Parker, acting on behalf of Defendant All Star Property, did not factor in known rental assistance already being received by certain tenants from outside sources such as governmental or charitable organizations.

49.    Once Defendant Gieve Parker certified and submitted the T-RAP Rent Payment Agreement forms to LiveStories, LiveStories would conduct an eligibility review, which included relying on the materially false and fraudulent representations therein, to determine whether the funds would be granted for that tenant, for the months requested, at the listed residence. If an application was approved, LiveStories would directly deposit T-RAP funds, provided by the U.S. Department of Treasury, into Defendant All Star Property's business account.  Defendants Gieve Parker and All Star Property did not have a consistent or reliable process for tracking which T-RAP funds from the LiveStories' direct deposits were to be applied to which tenant or property.

50.      Moreover, even when Defendants Parker and All Star Property did accurately credit a tenant's account on their internal rent rolls with T-RAP funds, they continued to accept double and even triple rent payments from the tenants and/or outside sources.  Further, tenants did not typically have a way to access their tenant account in such a way as to see that they did have a credit and Defendants Gieve Parker and All Star Property never provided any tenant with notification of the supposed rental credit or surplus created by the T-RAP funds.

51.      Further, on at least one occasion where a tenant did become aware of having a credit or surplus on their tenant account and requested Defendants Gieve Parker and All Star Property pay them that credit or surplus amount, Defendants Gieve Parker and All Star Property refused.

52.      Defendants Gieve Parker and All Star Property were paid monthly by the property owners for which they managed the various properties based on an agreed upon percentage of the rent payments received for those properties, from all sources, as management fees.  Defendant All Star Property's management fee percentage was usually between 8.5% and 10% and, in the case of Defendant Arlin Jordin, was 10%. Consequently, where Defendants Gieve Parker and All Star Property collected additional rent, including double and even triple rent, their management fees increased proportionately.  Further, not only did Defendant Gieve Parker benefit from the additional revenue for her company, Defendant All Star Property, but the direct personal compensation that she paid herself and her spouse was based on the management fees charged by Defendant All Star Property.

53.      Despite knowing of their obligation to return the fraudulently obtained T-RAP funds based on their failure to fulfill the agreed upon terms in the T-RAP Rent Payment Agreement forms, Defendants Gieve Parker and All Star Property did not repay the fraudulently obtained funds prior to their fraud scheme being uncovered and thereby concealed and knowingly and improperly avoided an obligation to pay or transmit money to the U.S. Treasury Department.

UNITED STATES' COMPLAINT IN INTERVENTION - 19

C. <u>Gieve Parker's and All Star Property's Certification and Submission of False and Fraudulent T-RAP Rent Payment Agreement Forms Were False and Fraudulent Claims for Payment</u>

54.    Defendant All Star Property and Gieve Parker's knowing certification and submission of materially false and fraudulent T-RAP Rent Payment Agreement forms, as set forth herein, were false claims for payment presented to LiveStories as a contractor, grantee, or other recipient of T-RAP funds to be spent or used on behalf of the U.S. Treasury Department and to advance the T-RAP and interests thereof, as the U.S. Treasury Department provided LiveStories, through the Washington State Department of Commerce and/or the City of Spokane, with the T-RAP funds falsely and fraudulently requested by Defendants Gieve Parker and All Star Property and ultimately paid to them based on their materially false and fraudulent T-RAP Rent Payment Agreement forms.

55.    The below are examples of Defendants Gieve Parker's and All Star Property's materially false and fraudulent claims knowingly presented to and paid by LiveStories on behalf of the U.S. Treasury Department, which defrauded the United States of T-RAP funds allocated to assist struggling low-income tenants during the COVID 19 pandemic and declared national emergency.

a.    <u>Tenant K.J.</u>

56.    Tenant K.J. is a low-income tenant that rented an apartment owned by Defendant Arlin Jordin and managed by Defendants Gieve Parker and All Star Property, in Spokane, Washington. Defendants Gieve Parker and All Star Property charged $575 per month in rent to K.J. from October 2020 through August 2021. Defendants Gieve Parker and All Star Property increased Tenant K.J.'s rent to $695 per month on September 1, 2021. Tenant K.J. moved out from the apartment on or about November 23, 2021, after settling a lawsuit with Defendants Gieve Parker and All Star Property.

UNITED STATES' COMPLAINT IN INTERVENTION - 20

57.    Defendants Gieve Parker and All Star Property were aware that during times relevant, Tenant K.J.'s monthly rent as reflected in her lease was $575 per month from October 2020 through August 2021.

58.    On or about November 23, 2021, Defendants Gieve Parker and All Star Property became aware that Tenant K.J. had moved out of the apartment because Defendants Gieve Parker and All Star Property had initiated eviction proceedings against Tenant K.J.  Defendant Gieve Parker reached a "cash for keys" agreement with Tenant K.J. in the court proceedings for the eviction resulting in her moving out on or about that date.

59.    Despite having knowledge that Tenant K.J. moved out on or about November 23, 2021, Defendants Gieve Parker and All Star Property materially falsely and fraudulently certified a T-RAP Rent Payment Agreement form for Tenant K.J. and submitted it to LiveStories on December 21, 2021—approximately one month after Tenant K.J. had moved out of the apartment.  Despite Defendants Gieve Parker and All Star Property knowing that Tenant K.J.'s rent for October 2020 through August 2021 was $575 as described in the lease, Defendants Gieve Parker and All Star Property falsely and fraudulently certified that Tenant K.J. owed unpaid rent for October 2020 through August 2021 at $895 per month.  In addition, Defendants Gieve Parker and All Star Property also falsely and fraudulently certified that Tenant K.J. would owe future rent for December 2021 through March 2022 at a rate of $895 per month—despite having knowledge that Tenant K.J. moved out of the apartment on or about November 23, 2021.  Defendants Gieve Parker and All Star Property falsely and fraudulently certified that Tenant K.J. required rental assistance totaling $16,110.

60.    On February 8, 2022, LiveStories, on behalf of the U.S. Treasury Department, and based on the false and fraudulent certifications of Defendants Gieve Parker and All Star Property in their December 21, 2021, T-RAP Rent Payment Agreement form for Tennant K.J., deposited $16,110 into Defendant All Star Property's bank account.  Had the U.S. Treasury Department known that the monthly rent falsely

certified by Defendants Gieve Parker and All Star Property was inflated and that Tenant K.J. had moved out of the apartment, it would not have authorized the resulting payment of $16,110 to Defendant All Star Property because neither Defendant Gieve Parker nor Defendant All Star Property were eligible to receive any T-RAP funds with respect to Tenant K.J.

61.    Defendants Gieve Parker and All Star Property also materially falsely and fraudulently certified in the December 21, 2021, T-RAP Rent Payment Agreement Forms that they would accept the $16,110  as "full satisfaction of any rent and late fee balance owed for the months paid by the program."  In fact, Defendants Gieve Parker and All Star Property did not use the fraudulently obtained T-RAP funds for Tenant K.J.'s rent.    First, Defendants Gieve Parker and All Star Property falsely and fraudulently inflated the amount of unpaid rent owed by Tenant K.J. by fraudulently increasing the amount of monthly rent on T-RAP Rent Payment Agreement form. Second, because Tenant K.J. moved out of the apartment on or about November 23, 2021, Defendants Gieve Parker and All Star Property did not use the fraudulently obtained funds for Tenant K.J.'s rent.  Defendants Gieve Parker and All Star Property collected inflated past rent for the apartment in which Tenant K.J. resided as well as rent for months when Tenant K.J. was not residing in the apartment at all.

62.    Had the U.S. Treasury Department known that in fact Defendants Gieve Parker and All Star Property would not use the T-RAP funds as full satisfaction of rent owed, it would not have authorized the resulting payment of $16,110 to Defendant All Star Property because neither Defendant Gieve Parker nor Defendant All Star Property were eligible to receive any T-RAP funds with respect to Tenant K.J.

b. <u>Tenant K.B.</u>

63.    Tenant K.B. is a low-income tenant that rented an apartment owned by Defendant Arlin Jordin and managed by Defendants Gieve Parker and All Star Property, located in Spokane, Washington.  During times relevant, Tenant K.B. was charged $795 per month for rent by the Defendants.

UNITED STATES' COMPLAINT IN INTERVENTION - 22

64.     Defendants Gieve Parker and All Star Property were aware that during times relevant, Tenant K.B.'s full monthly rent was being paid with rental assistance from the Spokane Housing Authority ("SHA").  Nonetheless, on December 1, 2021, Defendants Gieve Parker and All Star Property certified a T-RAP Rent Payment Agreement form and submitted it to LiveStories falsely and fraudulently certifying that Tenant K.B.'s rent was past due.  Defendants Gieve Parker and All Star Property also certified that Tenant K.B.'s future rent to be paid in December 2021 through March 2022, was $795, for a total rent assistance request of $3,180.

65.     On January 19, 2022, LiveStories, on behalf of the U.S. Treasury Department, and based on the materially false and fraudulent certifications of Defendants Gieve Parker and All Star Property in their December 1, 2021, T-RAP Rent Payment Agreement form for Tennant K.B., deposited $3,180 into Defendant All Star Property's bank account.  Had the U.S. Treasury Department known that in fact Tenant K.B. was not behind in her rent it would not have authorized the resulting payment of $3,180 to Defendant All Star Property because neither Defendant Gieve Parker nor Defendant All Star Property were eligible to receive any T-RAP funds with respect to Tenant K.B.

66.     Defendants Gieve Parker and All Star Property also materially falsely and fraudulently certified in their December 1, 2021, T-RAP Rent Payment Agreement form for a total of $3,180 in rental assistance for Tenant K.B., that they would accept the $3,180 as "full satisfaction of any rent and late fee balance owed for the months paid by the program."  In fact, Defendants Gieve Parker and All Star Property did not use any of the fraudulently obtained $3,180 in T-RAP funds for Tenant K.B.'s rent.  From December 2021 through March of 2022, Defendants Gieve Parker and All Star Property timely received a deposit of $795 each month from SHA for rental assistance in the full amount of rent owed by Tenant K.B.  Because Tenant K.B. did not owe any past due rent, as falsely and fraudulently claimed by Defendants Gieve Parker and All Star Property, and because SHA continued to pay the full rent owed during December 2021

through March of 2022, Defendants Give Parker and All Star Property effectively collected double rent for those specific months, for the apartment in which Tenant K.B. resided.

67.    Had the U.S. Treasury Department known that in fact Defendants Gieve Parker and All Star Property would not use the T-RAP funds as full satisfaction of rent owed, it would not have authorized the resulting payment of $3,180 to Defendant All Star Property because neither Defendant Gieve Parker nor Defendant All Star Property were eligible to receive any T-RAP funds with respect to Tenant K.B.

68.    Defendants Gieve Parker and All Star Property also materially falsely and fraudulently certified in their December 1, 2021, T-RAP Rent Payment Agreement form for Tenant K.B. that they would repay the funds if they did not fulfill the terms of the T-RAP Rent Payment Agreement Form.    Defendants Gieve Parker and All Star Property did not repay any of the $3,180 in falsely and fraudulently obtained T-RAP funds despite knowing that they did not fulfill the terms of the T-RAP Rent Payment Agreement form including not using the funds for Tenant K.B.'s rent.

69.    Further, on September 10, 2022, Tenant K.B. submitted a 20-day written notice to Defendant All Star Property for vacating the premises. As a result, Tenant K.B. thereafter requested Defendants Gieve Parker and All Star Property pay Tenant K.B. the remaining funds, for instance any credits or overpayments in rent for the apartment, from Tenant K.B.'s tenant account.  Despite having fraudulently obtained double rent for Tenant K.B.'s apartment for multiple specified months, Defendants Gieve Parker and All Star Property refused Tenant K.B.'s request.

70.    Defendant Arlin Jordin, as the owner of the apartment rented to Tenant K.B, received payment by mistake and was unjustly enriched as a direct result of the false and fraudulent certifications submitted by Defendants Gieve Parker and All Star Property.  Defendant Arlin Jordin was the recipient of the T-RAP funds obtained by fraudulent means—minus Defendants Gieve Parker and All Star Property's management fees.

UNITED STATES' COMPLAINT IN INTERVENTION - 24

71.     Despite knowing of their obligation to return the fraudulently obtained T-RAP funds for Tenant K.B. based on their failure to fulfill the agreed upon terms in the T-RAP Rent Payment Agreement forms, Defendants Gieve Parker and All Star Property did not repay the fraudulently obtained funds and thereby concealed and knowingly and improperly avoided an obligation to pay or transmit money to the U.S. Treasury Department.

//

//

c.   Tenants S.S.1 and S.W.

72.     Tenants S.S.1[2] and S.W. are low-income tenants that rented an apartment in Spokane, Washington, owned by Defendant Arlin Jordin and managed by Defendants Gieve Parker and All Star Property. During all times relevant, Defendants Gieve Parker and All Star Property charged Tenants S.S.1 and S.W. $800 per month in rent.

73.     Defendants Gieve Parker and All Star Property were aware that during times relevant, Tenant S.S.1 performed work on properties owned by All Star Property in exchange for monthly rental credits.  On August 30, 2021, Tenant S.S.1 received $800 in rent credits.  On September 4, 2021, Tenant S.S.1 received $700 in rent credits. On October 5, 2021, Tenant S.S.1 received $800 in rent credits.  On November 5 and November 20, 2021, Tenant S.S.1 received two rent credits totaling $800. On December 14, 2021, Tenant S.S.1 received $800 in rent credits. Despite S.S.1's employment and compensation keeping their rent payments current, Defendants Gieve Parker and All Star Property certified a T-RAP Rent Payment Agreement form on November 30, 2021, and submitted it to LiveStories—falsely and fraudulently certifying that Tenant S.S.1's rent for November 2021 was past due in the amount of $800.  Defendants Gieve Parker

---

[2] There is a another tenant referenced herein with the same initials.  Accordingly, this tenant is referred to herein as "S.S.1" and the other tenant with those initials as "S.S.2".

and All Star Property also certified that Tenant S.S.1's future rent to be paid in December 2021 through was $800 per month, for a total rent assistance request of $4,000.

74.     On December 20, 2021, LiveStories, on behalf of the U.S. Treasury Department, and based on the materially false and fraudulent certifications of Defendants Gieve Parker and All Star Property in the November 30, 2021 T-RAP Rent Payment Agreement form for Tenant S.S.1, deposited $4,000 into Defendant All Star Property's bank account. Had the U.S. Treasury Department known that in fact that Tenant S.S.1 was being compensated by Defendant All Star Property and was not behind in their rent, it would not have authorized the resulting payment of $4,000 to Defendant All Star Property because neither Defendant Gieve Parker nor Defendant All Star Property were eligible to receive any T-RAP funds with respect to Tenant S.S.1

75.     Defendants Gieve Parker and All Star Property also falsely and fraudulently certified in their November 30, 2021, T-RAP Rent Payment Agreement Form that they would accept $4,000 as "full satisfaction of any rent and late fee balance owed for the months paid by the program." In fact, Defendants Gieve Parker and All Star Property did not use the fraudulently obtained money for Tenant S.S.1's rent because Tenant S.S.1 continued to perform work for Defendant All Star Property in exchange for rental credit. Because Defendants Gieve Parker and All Star Property employed Tenant S.S.1 in exchange for rental credits while collecting T-RAP funds for Tenant S.S.1's rent through March 2022, via their false and fraudulent representations to LiveStories, Defendants Gieve Parker and All Star Property effectively collected thousands of dollars in excess rent for the apartment in which Tenant S.S.1 resided.

76.     Had the U.S. Treasury Department known in fact Defendants Gieve Parker and All Star Property would not use the T-RAP funds as full satisfaction of rent owed, it would not have authorized the resulting payment of $4,000 to Defendant All Star Property because neither Defendant Gieve Parker nor Defendant All Star Property were eligible to receive any T-RAP funds with respect to Tenant S.S.1

UNITED STATES' COMPLAINT IN INTERVENTION - 26

77.     To underscore Defendant Gieve Parker and All Star Property's false and fraudulent collection of Tenant S.S.1's rent, on February 16, 2022, Defendant All Star Property closed Tenant S.S.1's account.  According to Tenant S.S.1's account records maintained by Defendant All Star Property, Tenant S.S.1 was owed $2,400 in "rent credits" due to the work performed by Tenant S.S.1 for Defendant All Star Property.

78.     Defendant Arlin Jordin, as the owner of the apartment rented to Tenant S.S.1, received payment by mistake and was unjustly enriched as a direct result of the false and fraudulent certifications submitted by Defendants Gieve Parker and All Star Property.  Defendant Arlin Jordin was the recipient of the T-RAP funds obtained by fraudulent means—minus Defendants Gieve Parker and All Star Property's management fees.

79.     Defendants Gieve Parker and All Star Property also falsely and fraudulently certified in their November 30, 2021, T-RAP Payment Agreement Form for Tenant S.S.1 that they would repay the funds if they did not fulfill the terms of the T-RAP Rent Payment Agreement form.  Despite knowing of their obligation to return the fraudulently obtained T-RAP funds for Tenant S.S.1 based on their failure to fulfill the agreed upon terms in the T-RAP Rent Payment Agreement forms, Defendants Gieve Parker and All Star Property did not repay the fraudulently obtained funds and thereby concealed and knowingly and improperly avoided an obligation to pay or transmit money to the U.S. Treasury Department.

d. Tenants D.A. and B.M.

80.     Tenants D.A. and B.M. are low-income tenants that rented an apartment owned by Defendant Arlin Jordin and managed by Defendants Gieve Parker and All Star Property, located in Spokane, Washington. During all times relevant, Defendants Gieve Parker and All Star Property charged Tenants D.A. and B.M. $900 per month in rent.

81.     Defendants Gieve Parker and All Star Property were aware that Tenant D.A. received rental assistance from Goodwill and from Volunteers of America

UNITED STATES' COMPLAINT IN INTERVENTION - 27

("VOA") in November 2021 for the property they managed on behalf of Defendant Arlin Jordin. Specifically, on November 7, 2021, Tenant D.A. received $1,375 from Goodwill and $500 from VOA for rental assistance. Tenant D.A. received two more payments from Goodwill in November 2021 for a total of $1,400.  After receiving a total of $3,275 in rental assistance from Goodwill and VOA, Defendants Gieve Parker and All Star Property were aware that Tenant D.A. had no outstanding balance owed to Defendant All Star by November 28, 2021.

82.    On November 30, 2021, Defendants Gieve Parker and All Star Property certified and submitted a T-RAP Rent Payment Agreement form to LiveStories that falsely and fraudulently certified that Tenant D.A. was behind in their rent and that Tenant D.A. required future rental assistance for December 2021 to March 2022 for a total rental assistance request of $3,600.  On December 20, 2021, LiveStories paid Defendants Gieve Parker and All Star Property $3,600 in rental assistance for Tenant D.A. as a result of their materially false and fraudulently certified T-RAP Rent Payment Agreement Form.

83.    Defendants Gieve Paerker and All Star Property's November 30, 2021, T-RAP Rent Payment Agreement form for Tenant D.A. was materially false and fraudulent in multiple ways.  First, Defendant Gieve Parker and All Star Property falsely and fraudulently certified that Tenant D.A. was behind on their rent.  Second, Defendant Gieve Parker and All Star Properties falsely and fraudulently certified that Tenant D.A. required four months in future rent, even though only three months of future rent was allowable under the terms of T-RAP.  Third, Defendants Gieve Parker and All Star Property falsely and fraudulently certified that Tenant D.A. required future rental assistance despite Defendants' knowledge that Tenant D.A. received third-party rental assistance.  In fact, Defendants Gieve Parker and All Star Property received $2,770 in rental assistance for Tenant D.A. from Goodwill in January 2022.  In addition, Tenant D.A. made a rent payment for February 2022. The end result was that Defendants Gieve

Parker and All Star Property falsely and fraudulently collected double and—in the case of February 2022 when Goodwill, LiveStories, and Tenant D.A. paid rent—triple rent.

84.     On December 20, 2021, LiveStories, on behalf of the U.S. Treasury Department, and based on the materially false and fraudulent certifications of Defendants Gieve Parker and All Star Property in their November 30, 2021, T-RAP Rent Payment Agreement form for Tennant D.A., deposited $3,600 into Defendant All Star Property's bank account. Had the U.S. Treasury Department known that in fact Tenant D.A. was not behind in their rent and was receiving future rental assistance from Goodwill, it would not have authorized the resulting payment of $3,600 to Defendant All Star Property because neither Defendant Gieve Parker nor Defendant All Star Property were eligible to receive any T-RAP funds with respect to Tennant D.A.

85.     Defendants Gieve Parker and All Star Property also materially falsely and fraudulently certified in their November 30, 2021, T-RAP Rent Payment Agreement Form for a total of $3,600 in rental assistance for Tenant D.A., that they would accept the $3,600 as "full satisfaction of any rent and late fee balance owed for the months paid by the program." In fact, Defendants Gieve Parker and All Star Property did not use any of the fraudulently obtained $3,600 in T-RAP funds for Tenant D.A.'s rent. In January 2022, Defendants Gieve Parker and All Star Property received three separate payments of $900, $935, and $935 from Goodwill for rental assistance for Tenant D.A. Additionally, Tenant D.A. paid their February rent on February 3, 2022. Because Tenant D.A.'s full rent for December 2021 through March of 2022 was paid by Goodwill and Tenant D.A., Defendants Gieve Parker and All Star Property effectively collected double and even triple rent for the apartment in which Tenant D.A. resided for the months specified in the false and fraudulent T-RAP Rent Payment Agreement form.

86.     Defendant Arlin Jordin was unjustly enriched and received by mistake the T-RAP funds that were paid by LiveStories as a result of Defendants Gieve Parker and All Star Properties' false and fraudulent representations to LiveStories. On February 22, 2022, Defendants Gieve Parker and All Star Property closed Tenant D.A.s account

and transferred the account and funds in the account back to Defendant Arlin Jordin. At the time Tenant D.A.'s account was closed, the account showed that Tenant D.A.'s account had a $6,470 credit. In other words, due to the multiple rent payments from Goodwill, LiveStories, and Tenant D.A., Defendants Gieve Parker and All Star Property collected at least $6,470 more than they were owed, and then transferred this falsely and fraudulently collected money to Defendant Arlin Jordin, less any applicable management fees.

87. Defendants Gieve Parker and All Star Property also falsely and fraudulently certified in their November 30, 2021, T-RAP Rent Payment Agreement form for Tenant D.A. that they would repay the funds if they did not fulfill the terms of the T-RAP Rent Payment Agreement Form. Despite knowing of their obligation to return the fraudulently obtained T-RAP funds for Tenant D.A. based on their failure to fulfill the agreed upon terms in the T-RAP Rent Payment Agreement forms, Defendants Gieve Parker and All Star Property did not repay the fraudulently obtained funds and thereby concealed and knowingly and improperly avoided an obligation to pay or transmit money to the U.S. Treasury Department.

e. Tenant J.P.

88. Tenant J.P. is a low-income tenant that rented an apartment managed by Defendants Gieve Parker and All Star Property located in Spokane, Washington. Defendants Gieve Parker and All Star Property charged Tenant J.P. $725 per month from February 2020 to September 2020. Defendants Gieve Parker and All Star Property increased Tenant J.P.'s rent to $795 per month in October 2021.

89. Defendants Gieve Parker and All Star Property were aware that Tenant J.P. received monthly rental assistance from the Spokane Housing Authority ("SHA") because Defendants Gieve Parker and All Star Property received monthly rent payments of $575 from SHA for Tenant J.P.'s each month beginning in May 2020. Tenant J.P. paid Defendant All Star Property the remaining monthly rent balance owed. The rental assistance from SHA was directly deposited into Defendant All Star Property's bank

account as were Tenant J.P.'s payments. Nonetheless, on November 30, 2021, Defendants Gieve Parker and All Star Property falsely and fraudulently certified in a T-RAP Rent Payment Agreement form that Tenant J.P. was past due on their rent for November 2021 and owed $575, and that Tenant J.P. required future rental assistance for December 2021 through March 2022 in the amount of $795 per month, for a total rental assistance request of $4,199.[3]

90.     Defendants Gieve Parker and All Star Property's November 30, 2021, T-RAP Rent Payment Agreement form for Tenant J.P. was materially false and fraudulent in multiple ways.  First, Defendant Gieve Parker and All Star Property falsely and fraudulently certified that Tenant J.P. was behind in their rent.  Second, Defendant Gieve Parker and All Star Properties falsely and fraudulently certified that Tenant J.P. required four months in future rent, even though only three months of future rent was allowable under the terms of T-RAP.  Third, Defendants Gieve Parker and All Star Property falsely and fraudulently certified that Tenant J.P. required future rental assistance for the full amount of rent despite Defendants' knowledge that Tenant J.P. received third-party rental assistance from SHA.  Tenant J.P. did in fact receive monthly rental assistance from SHA for December 2021 through March 2023, resulting in Defendants Gieve Parker and All Star Properties collecting money in excess of Tenant J.P.'s rent for those months.

91.     On January 19, 2022, LiveStories, on behalf of the U.S. Treasury Department, and based on the materially false and fraudulent certifications of Defendants Gieve Parker and All Star Property in their November 30, 2021, T-RAP

---

[3] The T-RAP Rent Payment Agreement form for Tenant J.P. lists the monthly rent for the months of December through March as $795 per month with a total rental assistance of $3,755 marked through and $4,199 handwritten as the total.  This is reflective of Tenant J.P.'s rent being raised to $900 per month beginning in October 2021.

Rent Payment Agreement form for Tenant J.P., deposited $4,199 into Defendant All Star Property's bank account. Had the U.S. Treasury Department known that in fact Tenant J.P. was not behind in their rent it would not have authorized the resulting payment of $4,199 to Defendant All Star Property because neither Gieve Parker nor All Star Property were eligible to receive any T-RAP funds with respect to Tenant J.P.

92.    Defendants Gieve Parker and All Star Property also materially falsely and fraudulently certified in their November 30, 2021, T-RAP Rent Payment Agreement Form for a total of $4,199 in rental assistance for Tenant J.P., that they would accept the $4,199 as "full satisfaction of any rent and late fee balance owed for the months paid by the program." In fact, Defendants Gieve Parker and All Star Property did not use the fraudulently obtained $4,199 in T-RAP funds for Tenant J.P.'s rent. From December 2021 through February of 2022, Defendants Gieve Parker and All Star Property received a deposit of $575 from SHA for rental assistance in the full amount of rent owed by Tenant J.P., and in March 2022, Defendants received two payments, totaling $995, from SHA. Because Tenant K.B. did not owe any past due rent for November 2021, as falsely and fraudulently certified by Defendants Gieve Parker and All Star Property, and because SHA continued to pay rental assistance during December 2021 through March of 2022, Defendants Give Parker and All Star Property effectively collected excessive rent for the apartment in which Tenant J.P. resided.

93.    Had the U.S. Treasury Department known that in fact Defendants Gieve Parker and All Star Property would not use the T-RAP funds as full satisfaction of rent owed, it would not have authorized the resulting payment of $4,199 to Defendant All Star Property because neither Defendant Gieve Parker nor Defendant All Star Property were eligible to receive any T-RAP funds with respect to Tenant J.P.

94.    Defendants Gieve Parker and All Star Property also materially falsely and fraudulently certified in their November 30, 2021, T-RAP Rent Payment Agreement Form for Tenant J.P. that they would repay the funds if they did not fulfill the terms of the T-RAP Rent Payment Agreement Form. Despite knowing of their obligation to

UNITED STATES' COMPLAINT IN INTERVENTION - 32

return the fraudulently obtained T-RAP funds for Tenant J.P. based on their failure to fulfill the agreed upon terms in the T-RAP Rent Payment Agreement forms, Defendants Gieve Parker and All Star Property did not repay the fraudulently obtained funds and thereby concealed and knowingly and improperly avoided an obligation to pay or transmit money to the U.S. Treasury Department.

D. <u>False Claims Submitted and Caused to be Submitted by Gieve Parker and All Star Property</u>

95.    In executing the fraudulent scheme described herein, Defendants Gieve Parker and All Star Property submitted and caused to be submitted the following materially false and fraudulent T-RAP Rent Payment Agreement forms to LiveStories as a contractor, grantee, or other recipient of funds of the U.S. Treasury Department to be spent or used on behalf of  the  U.S. Treasury Department and to advance the U.S. Treasury Department's program (T-RAP) and interests, as the U.S. Treasury Department provided LiveStories, through the Washington State Department of Commerce and/or the City of Spokane, with the T-RAP funds falsely and fraudulently requested by Defendants Gieve Parker and All Star Property, and ultimately paid to them as a result, all as identified in the below table by tenant initials and the total T-RAP funds which were paid to Defendant All Star Property's bank account as a result:

| Tenant Initials[4] | Total T-RAP Payment |
|---|---|
| A.H. | $11,295.00 |
| S.I. | $3,980.00 |
| C.L. | $6,070.00 |
| C.J. | $4,429.00 |
| D.A. | $3,600.00 |
| D.J. | $6,765.00 |

[4] Where two different tenants have the same initials, additional numbers have been added to so indicate.

UNITED STATES' COMPLAINT IN INTERVENTION - 33

| | |
|---|---|
| E.I. | $5,952.00 |
| G.M. | $4,150.00 |
| H.A. | $12,325.00 |
| J.G. | $4,725.00 |
| J.T. | $5,266.00 |
| J.J. | $6,930.00 |
| J.P. | $4,199 .00 |
| J.O. | $2,715.00 |
| J.R. | $3,998.00 |
| K.B. | $3,180.00 |
| K.H. | $4,725.00 |
| K.W. | $5,355.81 |
| K.J. | $16,110.00 |
| L.H. | $9,503.00 |
| M.H. | $7,307.00 |
| M.M. | $8,670 |
| J.M. | $3,500.00 |
| R.M.1 | $6,398.95 |
| R.M.2 | $8,341.00 |
| S.D. | $6,361.34 |
| S.M. | $3,972.00 |
| S.C. | $5,480.00 |
| S.S.1 | $4,000.00 |
| S.S.2 | $9,225.00 |
| S.L. | $14,154.90 |
| W.W. | $3,667.87 |

UNITED STATES' COMPLAINT IN INTERVENTION - 34

1

2

3    96.    Defendants Gieve Parker and All Star Property received at least

4    $202,151.87 in T-RAP funds intended for struggling tenants based Defendants Gieve

5    Parker's and All Star Property's materially false and fraudulent certifications on these

6    T-RAP Rent Payment Agreement Forms submitted to LiveStories.

7    **COUNT I**
**(Violation of False Claims Act)**
8    **(31 U.S.C. § 3729(a)(1)(A))**

9    97.    The United States repeats and realleges the allegations contained in

10    Paragraphs 1 through 96 above, as if fully set forth herein.

11    98.    Defendants Gieve Parker and All Star Property violated the False Claims

12    Act, 31 U.S.C. § 3729(a)(1)(A), by knowingly certifying and presenting, and causing

13    to be certified and presented to LiveStories, as a contractor, grantee, or other recipient

14    of funds of the U.S. Treasury Department, to be spent or used on behalf of  the  U.S.

15    Treasury Department and to advance the U.S. Treasury Department's program (T-

16    RAP) and interests as the U.S. Treasury Department provided LiveStories, through the

17    Washington State Department of Commerce or the City of Spokane, for the T-RAP

18    funds falsely and fraudulently requested by Defendants Gieve Parker and All Star

19    Property, the false and fraudulent claims for T-RAP rental assistance funds identified

20    in paragraph 95 *supra*.

21    99.    The United States paid the false and fraudulent claims because of

22    Defendants Gieve Parker's and All Star Property's acts, and incurred damages as a

23    result.

24    100.    Pursuant to 31 U.S.C. § 3729(a), Defendants Gieve Parker and All Star

25    Property are liable to the United States Government for a civil penalty for each

26    violation of the False Claims Act committed by Defendants Gieve Parker and All Star

27    Property.

28

UNITED STATES' COMPLAINT IN INTERVENTION - 35

101.    Pursuant to 31 U.S.C. § 3729(a), Defendants Gieve Parker and All Star Property are liable to the United States for three times the amounts of all damages sustained by the United States because of Defendants' conduct.

//

**COUNT II**
**Violation of the False Claims Act**
**(31 U.S.C. § 3729(a)(1)(B))**

102.    The United States repeats and realleges the allegations contained in Paragraphs 1 through 101 above, as if fully set forth herein.

103.    Defendants Gieve Parker and All Star Property violated the False Claims Act, 31 U.S.C. § 3729(a)(1)(B), by knowingly making, using, or causing to be made or used, false records or statements that were material to the false and fraudulent claims, identified in paragraph 95 *supra*, certified and presented to LiveStories, as a contractor, grantee, or other recipient of funds of the U.S. Treasury Department, to be spent or used on behalf of  the  U.S. Treasury Department and to advance the U.S. Treasury Department's program (T-RAP) and interests as the U.S. Treasury Department provided LiveStories, through the Washington State Department of Commerce or the City of Spokane, for the T-RAP funds falsely and fraudulently requested by Defendants Gieve Parker and All Star Property, and which claims the United States did pay.

104.    The United States paid the false and/or fraudulent claims because of Defendants Gieve Parker's and All Star Property's acts, and incurred damages as a result.

105.    Pursuant to 31 U.S.C. § 3729(a), Defendants Gieve Parker and All Star Property are liable to the United States Government for a civil penalty for each violation of the False Claims Act committed by Defendants.

106.    Pursuant to 31 U.S.C. § 3929(a), Defendants Gieve Parker and All Star Property are liable to the United States for three times the amounts of all damages sustained by the United States because of Defendants' conduct.

UNITED STATES' COMPLAINT IN INTERVENTION - 36

1  //

2  //

3  //

4  //

## COUNT III
### (Violation of the False Claims Act)
### (31 U.S.C. § 3729(a)(1)(G))

107.    The United States incorporates by reference Paragraphs 1 through 106 of this Complaint as if fully set forth herein.

108.    In performing the acts described above, Defendants Gieve Parker and All Star Property knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money or property to the United States, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the United States, to wit, payments and overpayments associated with false and fraudulent T-RAP Rent Payment Agreement forms presented to secure T-RAP funding by Defendants Gieve Parker and All Star Property, in violation of 31 U.S.C. § 3729(a)(1)(G).

109.    Defendants Gieve Parker and All Star Property, and as a direct result of their actions, others, were paid money by the United States that they knew they were not entitled to receive. Despite having knowledge that they were overpaid by the United States, Defendants Gieve Parker and All Star Property and others have retained the overpayments.

110.    Defendants Gieve Parker and All Star Property had an obligation to return such overpayments to the United States, and such knowing failure to return the overpayments is a violation of 31 U.S.C. § 3729(a)(1)(G).

111.    Defendants Gieve Parker's and All Star Property's failure to refund the known overpayments caused by their false and fraudulent claims constitutes a separate violation of the False Claims Act.

1  //

2  //

3  //

4  //

## COUNT IV
### (Payment by Mistake)

112.    The United States incorporates by reference Paragraphs 1 through 111 of this Complaint as if fully set forth herein.

113.    This is a claim for the recovery of monies paid by the United States to all Defendants as a result of mistaken understandings of fact based on the fraudulent T-RAP Rent Payment Agreement forms submitted to LiveStories by Defendants Gieve Parker and All Star Property.

114.    The United States paid Defendants upon claims that were under a mistaken apprehension of fact. The United States' mistaken belief was material to its decision to pay Defendants for such claims.  Accordingly, Defendants are liable to make restitution to the United States of the amounts of the payments made in error to it by the United States.

## COUNT V
### (Unjust Enrichment)

115.    The United States incorporates by reference Paragraphs 1 through 114 of this Complaint as if fully set forth herein.

116.    This is a claim for the recovery of monies by which Defendants have been unjustly enriched at the expense of the United States.

117.    By directly or indirectly obtaining government funds to which they were not entitled, Defendants were unjustly enriched, and are liable to account for and pay such amounts, or the proceeds therefrom, which are to be determined at trial, to the United States.

## COUNT VI
### (Negligence)

UNITED STATES' COMPLAINT IN INTERVENTION - 38

118.    The United States incorporates by reference Paragraphs 1 through 117 of this Complaint as if fully set forth herein.

119.    This is a claim for the recovery of damages to the U.S. Treasury Department's Rental Assistance Program ("T-RAP") caused by Defendants' negligence.

120.    Defendants, owing a duty of care to the United States as property owners and property managers who received T-RAP funds and who promised, directly or through their appointed agents, to use the funds consistent with the rules and requirements of T-RAP, negligently breached that duty, causing damages to the United States in the form and amount of payments made by the U.S. Treasury Department upon claims based on requests for T-RAP rental assistance made by or on behalf of the Defendants. Defendants are liable to the United States for those damages.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States demands and prays that judgment be entered in its favor against Defendants as follows:

I.    On the First, Second, and Third Counts, as to Defendants Gieve Parker and All Star Property under the False Claims Act, for the amount of the United States' damages, trebled as required by law, and such civil penalties as are authorized by law, together with all such further relief as may be just and proper.

II.    On the Fourth, Fifth, and Sixth Counts, as to all Defendants, for payment by mistake, unjust enrichment, and negligence, respectively, for the damages sustained and/or amounts by which Defendants were unjustly enriched or were paid by mistake, and for the damages caused to the United States as a result of Defendants' negligence, plus interest, costs, and expenses, and for all such further relief as may be just and proper.

//

//

UNITED STATES' COMPLAINT IN INTERVENTION - 39

//

## **DEMAND FOR JURY TRIAL**

The United States demands a trial by jury in this case.

DATED this 11th day of December, 2023,

Vanessa R. Waldref
United States Attorney

By: _____

Tyler H.L. Tornabene
Daniel Hugo Fruchter
Jacob E. Brooks
Assistant United States Attorneys
United States Attorney's Office
Eastern District of Washington

UNITED STATES' COMPLAINT IN INTERVENTION - 40